**Appeal No. 24-6898**

## IN THE UNITED STATES COURT OF APPEALS

### FOR THE NINTH CIRCUIT

#### ARTHUR TSATRYAN

*Plaintiff-Appellant,*

vs.

STEVEN PAUL FERNANDEZ, ET AL.,

*Defendants - Appellees.*

On Appeal From the United States District Court
for the Central District of California, Los Angeles

Hon. Consuelo B. Marshall

Case No. 2:24-cv-08947-CBM-JPR

APPELLANT'S OPENING BRIEF

Arthur Tsatryan

10040 Tujunga Canyon Blvd., Apt. 7
Tujunga, California 91042
Tel. 818-266-9163
*Plaintiff-Appellant, In Pro Per*

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................1

II. JURISDICTIONAL STATEMENT...........................................5

III. ISSUE PRESENTED................................................................ 5

IV. STATEMENT OF THE CASE ................................................. 5

    A.   FACTUAL AND STATUTORY BACKGROUND ...................... 5

    B.   LASC CASE NO.: BC680322 ............................................. 13

    C.   22STCV18171/B326148 .................................................. 14

    D.   VOID CHILD SUPPORT ORDER ....................................16

    E.   APPELLATE JUSTICES .................................................... 18

    F.   NOTICES OF DISQUALIFICATIONS....................................19

V. STANDARD OF REVIEW ...................................................... 21

VI. SUMMARY OF ARGUMENT.................................................. 23

VII. ARGUMENT ........................................................................ 24

    A.   JUDGE MARSHALL FALSIFIED AND
       MISCONSTRUED RECORD .............................................. 26

       i.    Page 16........................................................ 26

       ii.   Page 69 .................................................... 27

    B.   COURT'S FIRST GROUND FOR DISMISSAL ...................... 28

    C.   ROOKER-FELDMAN DOCTRINE ...................................... 33

D.  IN RE MARRIAGE OF MCNEILL ...................................... 37

E.  COURT'S SECOND GROUND ........................................... 38

F.  COLLATERAL ESTOPPEL.............................................. 40

G.  LEGAL STANDARDS GOVERNING
    FRAUD ON THE COURT ............................................... 46

H.  EXAMPLES OF LITIGATION MISCONDUCT
    WHICH HAVE BEEN HELD TO CONSTITUTE
    FRAUD ON THE COURT............................................... 47

VII.  CONCLUSION ............................................................. 50

## TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ................................................................. 22

*Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) ................................... 24

*Bianchi v. Rylaarsdam*,
334 F.3d 895, 900 (9th Cir. 2003) ................................................. 31

*Bulloch v. United States*,
763 F.2d 1115, 1121 (10th Cir. 1985) ........................................... 4, 28

*Cooper v. Ramos*, 704 F.3d 772 (9th Cir. 2012) ............................... 31, 34, 36

*Cunningham v. Ward*, 546 F.2d 481, 482 (2d Cir. 1976) .............................. 24

*Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) ..................................... 22

*Derzack v. Cnty. of Allegheny, Pa.*,
173 F.R.D. 400, 416 (W.D. Pa. 1996) ............................................. 49

*Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003) .............................. 47

*Elliott v. Bronson*, 872 F.2d 20, 21-22 (2d Cir. 1989) ......................21, 24, 37

*England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960) ................................. 47

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ......................................... 21

*Haines v. Kerner*,
404 U.S. 519, 520, 92 S.Ct. 594, 595,
30 L.Ed.2d 652 (1972) ............................................................ 21

*Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ..................................... 22

*In re Intermagnetics Am., Inc.*, 926 F.2d 912, 916 (9th Cir. 1991) .................. 46

iii

*In re Levander*, 180 F.3d 1114 (9th Cir. 1999) ..................................... 49, 50

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238, 244 (1944) ..................................................... 46, 47, 48

*Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) ...................................... 21

*Hooper v. Brnovich*, 56 F.4th 619, 622 (9th Cir. 2022) ................. 30, 31, 34, 36

*Hughes v. Rowe*,
449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) .................... 21

*Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478 (9th Cir. 2018) ........... 25, 38

*Kenner v. C.I.R.*, 387 F.3d 689 (1968) ................................................. 4, 28

*Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004) ................. 35, 36

*Langadinos v. Wash. State Bar Ass'n*,
2:23-cv-250, 8-9 (W.D. Wash. Mar. 15, 2024) ...........................34, 35, 36

*Leadsinger, Inc. v. BMG Music Pub.*,
512 F.3d 522, 532 (9th Cir. 2008 ..................................................... 21

*Livingston v. Adirondack Beverage Co.*,
141 F.3d 434, 437 (2d Cir. 1998) ..................................................... 22

*Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) ..................................... 21

*Miranda v. Arizona*, 384 U.S. 436, 483 n.54 (1966) ...................................... 2

*Montana v. United States*, 440 U.S. 147, 155 (1979) ................................... 41

*Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989) ..................................22, 24

*New England Bond Mortgage Co. v. Brock*,
270 Mass. 107, 169 N.E. 803, (Mass. 1930) ....................................... 32

*Noel v. Hall*, 341 U.S. 1148, 1163 (9th Cir. 2003) .................................. 31, 34

*People v. Sakarias* (2000) 22 Cal.4th 596 ................................................. 8, 33

*Plotkins v. Cnty. of Kaua'i, Fin. Div. Real Prop. Assessment, Civ.*
24-00019 JMS-KJM, 4-5 (D. Haw. Apr. 30, 2024) ........................ 21, 32

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 ......................... 47, 49, 50

*Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) ............................... 22, 24

*Skinner v. Switzer*,
562 U.S. 521, 131 S. Ct. 1289, 179 L. Ed. 2d 233 (2011) ............ 31, 32, 36

*Standard Oil of Cal. v. United States*, 429 U.S. 17 (1976) ........................... 46

*Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013) ........... 21

*Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) ........... 22

*United States v. Estate of Stonehill*,
660 F.3d 415, 443 (9th Cir. 2011) ............................................. 46, 50

*United States v. Shaffer Equipment Company*, 11 F.3d 450 (4th 21 Cir. 1993) ... 48

*United States v. Smith-Baltiher*, 424 F.3d 913, 919 (9th Cir. 2005) ........ 26, 41, 43

*Worldwide Church of God v. Mc.Nair*, 805 F.2d 888, 890 (9th Cir. 1986) ......... 30

## STATE COURT CASES

*Abelleira v. District Court of Appeal*
(1941) 17 Cal.2d 280 ....................................................... 28

*Cassim v. Allstate Ins. Co.*,
33 Cal.4th 780, (Cal. 2004) ................................................ 29

*Cedars-Sinai Med. Ctr. v. Sup. Ct., Los Angeles Cty*,
18 Cal.4th 1, 9 (Cal. 1998) ............................................. 39, 40

*Christie v. City of El Centro*,
135 Cal.App.4th 767, 776-77 (Cal.Ct. App. 2006) ............................. 11

*City of Los Angeles v. Morgan,*
105 Cal.App.2d 726, 732 (Cal. Ct. App. 1951) ......................... 32, 33, 34

*Clark v. State of California,*
2022 WL 1511772, at \*6 (C.D. Cal. Feb. 24, 2022) ...................... 25, 39

*Cuevas v. Truline Corp.,*
118 Cal. App. 4th 56, 12 Cal. Rptr. 3d 706 (2d Dist. 2004) .................. 28

*Dale v. Dale,* 66 Cal.App.4th 1172, 1183 ................................................. 45

*De Vally v. Kendall De Vally Operalogue Co,*
220 Cal. 742, 32 P.2d 638 (1934) ............................................................ 28

*Evans v. Dabney,* 37 Cal. 2d 758, 235 P2d 604 (1951) ................................ 28

*Gaffney v. Downey Savings Loan Assn.*
(1988) 200 Cal.App.3d 1154, 1168 ......................................................... 18

*Hayward v. Superior Court of Napa Cnty.,*
2 Cal.App.5th 10, 17 n.5 (Cal. Ct. App. 2016) ....................................... 1

*Hernandez v. First Student, Inc.,*
37 Cal.App.5th 270, 286 (Cal. Ct. App. 2019) ...................................... 29

*Hicks v. Reis* (1943) 21 Cal.2d 654, 660 ................................................... 18

*In re Aguilar,* (2004) 34 Cal.4th 386 ................................................... 1, 15

*In re Marriage of Deal* (2020) 45 Cal.App.5th 613 ...................................... 1

*In re Marriage of Condon,*
62 Cal.App.4th 533, 562 (Cal. Ct. App. 1998) ...................................... 16

*In re Marriage of McNeill,*
160 Cal.App.3d 548, 556-57 (Cal. Ct. App. 1984) ................... 37, 38, 46

*In re Marriage of Testa*
(1983) 149 Cal.App.3d 319 [ 196 Cal.Rptr. 780] ....................... 9, 27, 38

*Kobayashi v. Superior Court,*
175 Cal.App.4th 536, 543 (Cal. Ct. App. 2009) ……………………….….. 15

*Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 725 …………………….. 44

*Lucido v. Superior Court*
(1990) 51 Cal.3d 335, 341 [272 Cal. Rptr. 767, 795 P.2d 1223] ………….. 41

*Meley v. Collins,* 41 Cal. 663 (Cal. 1871) [10 Am.Rep. 279] …………………….. 33

*Middleton v. Finney,* 214 Cal. 523, 6 P.2d 938, 78 A.L.R. 1104 (1931) …………. 28

*Pacific Lumber Co. v. State Water Resources Control Bd.*
(2006) 37 Cal. 4th 921 …………………………………………………………….. 41

*People v. Batt,* 24 Cal.App.4th 1044, 1048 (Cal. Ct. App. 1994) ………………… 9

*People v. Morrison,* 34 Cal.4th 698, 713 n.5 (Cal. 2004) ……………………….. 8, 33

*People v. Osslo* (1958) 50 Cal.2d 75, 104 [323 P.2d 397] …………………………. 9

*People v. Steele,* 27 Cal.4th 1230, 1244,
120 Cal. Rptr. 2d 432, 47 P.3d 225 (Cal. 2002) ……………………………….. 20

*Silberg v. Anderson,*
50 Cal.3d 205, at p. 214, 266 Cal. Rptr. 638,
786 P.2d 365 (Cal. 1990) ……………………………………………………….. 40

*Sosnick v. Sosnick,*
71 Cal.App.4th 1335, 1340 (Cal. Ct. App. 1999) …………………..28, 45, 46

*Vaughn v. Municipal Court* (1967) 252 Cal.App.2d 348, 358 …………………….. 15

*Westsiders Opposed to Overdevelopment v. City of Los Angeles*
(2018) 27 Cal.App.5th 1079, 1091 ……………………………………………….. 44

*Worton v. Worton,*
234 Cal.App.3d 1638, 286 Cal. Rptr. 410 (Cal. Ct. App. 1991) …………. 45

## FEDERAL STATUTORY AUTHORITIES

18 U.S.C. §§1501-1520 ................................................................... 19

18 U.S.C. §1519 ........................................................................ 19

28 U.S.C. §1291 ......................................................................... 5

28 U.S.C. § 1915(e)(2)(B) .............................................................. 22

42 U.S.C. §1983 ......................................................................... 5

## STATE STATUTORY AUTHORITIES

CCP §1060, et. seq. ................................................................. 10, 11

Civ. Code §3439, et. seq. ........................................................... 10, 11

Civ. Code §§1213-1215 ................................................................. 32

Pen Code §132 .......................................................................... 19

Pen Code §135 .......................................................................... 19

## FEDERAL RULES

Federal Rule 60 (b)(3)(4)(6), and (d)(3) ................................................ 5

Federal Rule of Civil Procedure 60(d)(3) ........................................... 46, 47

## OTHER

Cal. Jur. 3d, Appellate Review §§ 26 to 34 ............................................ 28

Hoover, Civil Liberties and Law Enforcement:
  The Role of the FBI, 37 Iowa L. Rev. 175, 177-82 (1952)...................... 2

State Bar of California Rule 3.4 ............................................................... 7

Webster's 3d New Internet. Dict. (2002), 1305 ...........................................1

2 Witkin, Cal. Procedure (3d ed. 1985) §50, Courts, p. 65 ............................ 9

7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23 ...............................4, 28

45 Am.Jur. 481 ................................................................................. 33

## I. INTRODUCTION

The divorce procedure Arthur Tsatryan vs. Polina (also known as Lina) Tsatryan[1] was not just a confrontation between them. On one side, Arthur was betrayed by his attorneys and paid about $130,000 in legal fees, devastated financially and deteriorated health, in the end, he was found disabled due to the divorce procedures. (Dkt. No. 2, at 88:21-27) On the other side, there was a group of swindlers who manipulated Polina, forged and fabricated documents, denied legal demands, lied[2], hid court orders, evidence, documents, and issued and filed fake and illegal documents. (*Id*. passim)

It may seem that Arthur is a useless and stupid person who has groundlessly attacked the smart, proud, law-abiding Polina for 16 years. But this is not so. What reasonably prudent person can believe that Polina, an ordinary person, would have a Law Firm representing her without paying legal fees for 7 years and having a total bill of $2,520,250 (Dkt. No. 2 at 33:21-26; 84:24-28) issued $621,665 credit when her bill was $1,210,797.10? (*Id*. at 84:13-23) Shulman refused to represent

---

[1] Appellant refers to the parties by their first names for convenience, intending no disrespect. (See *In re Marriage of Deal* (2020) 45 Cal.App.5th 613, 615) All other parties and counsel will be referred to solely by their last names. No disrespect is intended. (*Hayward v. Superior Court of Napa Cnty.*, 2 Cal.App.5th 10, 17 n.5 (Cal. Ct. App. 2016))

[2] Arthur employs the term "lie" in its customary usage, as involving a deliberate misrepresentation. (See, e.g., Webster's 3d New Internet. Dict. (2002);. 1305)' *In re Aguilar*, 34 Cal.4th 386, 392 n.3 (Cal. 2004) ["We employ the term "lie" in its customary usage, as involving a deliberate misrepresentation"])

her for failing to pay $5,898.30, and she was sued for failing to pay her expert witness $6,250.00. (*Id.* at 36:3-13) Arthur and Polina themself are not the main characters in the case. Officers of the court are the main characters in the case.

It is irrefutable that court officers Fernandez, Block, and others committed fraud upon the court during the state court proceedings. The misconduct associated with this case was not a compromise of mistakes on the periphery. It was not the consequences of episodic errors of Judgment. Instead, it was systematic, pervasive, and purposeful, with each act aimed at affecting the administration of justice through thoroughly fabricated facts, lies, and obstruction to justice designed to frame Arthur. As this misconduct marched towards its payoff, defendants were more than willing to carry and place their deceptions deep within the machinery of the Court's legal process. The numerous deceptions were not minor. They began at the heart of the divorce case and moved outward from there, ripples in a tainted pond, ultimately touching every aspect of justice.

Conducting an honest litigation was not only the defendants' sworn obligation, it was of course critical to the furtherance of justice. As noted by our Supreme Court, "We can have the Constitution, the best laws in the land, and the most honest reviews by courts – but unless the law enforcement profession is steeped in the democratic tradition, maintains the highest in ethics, and makes its work a career of honor, civil liberties will continually – and without end be violated." *Miranda v. Arizona*, 384 U.S. 436, 483 n.54 (1966) (quoting Hoover,

2

Civil Liberties and Law Enforcement: The Role of the FBI, 37 Iowa L. Rev. 175, 177-82 (1952)).

The litigation conducted by the defendants was neither just nor legal. Indeed, it was "corrupt and tainted." Instead of seeking the truth, the defendants concealed it or manufactured it. Instead of advancing justice, they obstructed justice. Worse, counsels, charged with the solemn responsibility of protecting the truth, ignored their "gatekeeper" function in favor of assisting Polina with their treachery. When their star witness "repeatedly" lied under oath, counsels sat on her hands and lied. When it became abundantly clear that the Judgment's core "findings" were the byproduct of fabricated evidence and a reprehensible effort to frame Arthur, the defendants unjustly pushed the court to declare Arthur a "Vexatious Litigant" to bar him from further fight for justice in the state Court. Consumed by their desire to win, they engaged in an unconscionable scheme by affirmatively advancing Fernandez and Karney's fabricated evidence, creating false facts, hiding information from Arthur, repeatedly breaching their duty of candor to the Court, lying to the Court, and knowingly and recklessly submitting information to the State Court that was blatantly false on key issues going to the heart of the litigations. Ignoring their solemn obligation to aid the Court, the defendants instead did violence to their essential charter by permitting officers of the Court to obstruct justice, all in a misguided effort to obtain "a win" by improperly influencing the Court. Uncomfortable as it is to recognize such conduct in individuals whose very

3

purpose is to advance justice, it must be recognized here and publicly dealt with to begin to repair the tremendous damage defendants have already done to the Court and the integrity of our judicial system.

Whenever any court officer commits fraud during a proceeding in the court, he/she is engaged in "fraud upon the court". In *Bulloch v. United States*, 763 F.2d 1115, 1121 (10th Cir. 1985), the court stated "Fraud upon the court is fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury. ... It is where the court or a member is corrupted or influenced or influence is attempted or where the judge has not performed his judicial function --- thus where the impartial functions of the court have been directly corrupted." "Fraud upon the court" has been defined by the 7th Circuit Court of Appeals to "embrace that species of fraud which does, or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d ed., p. 512, ¶ 60.23. The 7th Circuit further stated "a decision produced by fraud upon the court is not in essence a decision at all, and never becomes final."

Instead of following the law regarding fraud on the court, the district court ignored binding authority and circumvented the law. Its decision must be reversed.

4

## II. JURISDICTIONAL STATEMENT

The district court has subject matter jurisdiction over federal questions in

this case under 42 U.S.C. §1983 (known as the Civil Rights Act of 1871) and the

First Amendment. 42 U.S.C. §1983 allows individuals to sue state or local officials

for violating their constitutional rights. The district also has jurisdiction because

Arthur seeks relief under Federal Rule 60 (b)(3)(4)(6), and (d)(3), and Arthur

alleges a violation of federal constitutional rights to petition. (Dkt. No.2 at 26)

This Court has jurisdiction under 28 U.S.C. §1291 because this appeal is

from a final order of dismissal. The district court dismissed Arthur's Complaint on

11/07/2024. (Dkt. No. 45) Arthur timely filed a notice of appeal. (Dkt. No. 50)

## III. ISSUE PRESENTED

1.    Whether the Court erred in the DISMISSAL of the Complaint without

leave to amend before the issue of the Summons and service of process.

## IV. STATEMENT OF THE CASE

### A. FACTUAL AND STATUTORY BACKGROUND

Following Polina's unbearable behavior, on 08/03/2009, Arthur filed DV

case LQ00983 in Van Nuys Superior Court. Polina hired Ms. Spangler as her

attorney. (*Id.* ¶58)

On 09/23/2009, Arthur hired a prominent attorney, Trope, and he filed a

Petition for Dissolution of Marriage in  Los Angeles Superior Court Central

District. Per Trope, he filed the case in the Central District because he knew judges

5

there, which would make his job easier. (*Id.* ¶61)

On 03/14/2010, per the advice of Trope, Polina fired Spangler and hired Trope's friend, Kelly. (Id. ¶69)

After paying the attorney's fees of $111,206.00 using credit cards and loans from family and friends (Id. ¶71) and betrayal of attorneys, Arthur was forced to represent himself In Pro Per since 2012. In 2015, Arthur's debt was around $600,000. At the same time, Polina has only paid a retention fee of $5,000. (*Ibid*)

On 04/18/2012, Polina revealed that she was dating Arthur's attorney, Trope. (*Id.* ¶81-82)

On 04/03/2013, the Family Law Department Supervising Judge ordered the action reassigned to Department 64 before Judge Juhas *for long-cause trial assignment **only***. (*Id.* ¶86)

During the Trial, Juhas exhibited numerous misconducts and favoritism, advocated for Polina, revealed ex parte communication with Fernandez, and demonstrated a personal bias and prejudice against Arthur. Those facts are listed in the Notice of Disqualification. *E.g.* on the second day of the trial, Juhas unfoundedly accused Arthur: "Sir, that the whole - you just can't leave her alone. You play a big part of this. You refuse to see it and understand it. The reason it took so long to get this case to trial is because you kept bringing endless contempts." (*Id.* ¶¶87-96)

On 04/03/2015, Juhas filed a Disso Master Data, taking numbers from thin

6

air. Juhas merely faked incomes by increasing Arthur's income and reducing Polina's. (*Id.* ¶¶103-106) In 2018, Arthur appealed the Child Support Order. Perluss and Segal faked facts, concurring with the Opinion written by Bensinger. (*Id.* ¶¶107-109)

At the Trial, on 02-27-2015, Fernandez unexpectedly presented fabricated and fake Exhibit EF, which was not on Polina's Exhibit List and was not served. Arthur objected numerous times to the evidence that was a surprise to him, but Juhas slyly diverted Arthur's attention and introduced Exhibit EF into the evidence. The State Bar of California commands in the Rule 3.4 that a lawyer shall not:

(a)     unlawfully obstruct another party's access to evidence, including a witness, or unlawfully alter, destroy, or conceal a document or other material having potential evidentiary value. A lawyer shall not counsel or assist another person to do any such act;

(b)     suppress any evidence that the lawyer or the lawyer's client has a legal obligation to reveal or to produce;

(c)     falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that prohibited by law;

(d)     knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exist.

Undeniably and irrefutable that Fernandez fabricated Exhibit EF and encouraged Polina to lie under oath. Defendants, knowing the use of false evidence

7

or argument to obtain a favorable ruling, *deprived Arthur of due process.* (See

*People v. Sakarias* (2000) 22 Cal.4th 596, 635-636, at p. 633 [*People v. Morrison,*

34 Cal.4th 698, 713 n.5 (Cal. 2004) (*Id.* ¶110-120)

On 08/26/2015, Fernandez, on Polina's behalf, filed an Ex Parte Application

in proper Department 60, which was denied with the relevant following requests:

    (1)    That Arthur immediately vacate the real property;

    (2)    That Polina be awarded exclusive possession of the property

Fernandez refiled the request as a regular motion. (*Id.* ¶124)

On 09/24/2015, Fernandez, on Polina's behalf, filed a motion for the

following relief in Department 60:

    (1)    *Partially vacate the Judgment regarding the Via Milagro*

*property that the equity should be divided equally*

    (2)    Set pre-trial discovery and schedule orders re Via Milagro

property's equity; and

    (3)    Order Arthur to pay $50,000 in attorney's fees and costs under

Family Code section 27 (a), 2107(c) (Feldman sanctions) (*Id.* ¶125)

On 11/03/2015, without authority, Juhas ordered both Motions to be

transferred to his Department 64. In holding that a judge may not retain jurisdiction

in himself or herself, the California Supreme Court held, "An individual judge (as

distinguished from a court) is not empowered to retain jurisdiction of a cause. The

cause is before the court, not the individual judge of that Court, and the jurisdiction

which the judge exercises is the jurisdiction of the Court, not the judge. Rules of Court that provide that posttrial proceedings in a cause shall be heard by the judge who tried the matter are entirely proper, **but the individual judge cannot order that such proceedings must be heard by him**. (emphasis added) (*People v. Osslo* (1958) 50 Cal.2d 75, 104 [323 P.2d 397]; see also 2 Witkin, Cal. Procedure (3d ed. 1985) §50, Courts, p. 65) This rule applies equally well to the present situation absent clear statutory language requiring a particular judge to hear Respondent's two Requests. (See *People v. Batt*, 24 Cal.App.4th 1044, 1048 (Cal. Ct. App. 1994)) Juhas had no power to order the proceedings to be heard by him. (*Id.* ¶126-127)

Juhas denied both motions but ruled: "… [I] think that while I can't evict him, I can give her exclusive use and possession of the home because it's now awarded to her as her sole and separate property." Juhas granted Polina 100 percent of the property, the relief she didn't request. Arthur objected and argued, but it was fruitless. (Id. ¶¶128-135) In analogy to case BD512645, is *In re Marriage of Testa*. In re *Marriage of Testa*, the wife requested the judgment to be set aside and did not ask to set aside the property settlement. The Court held, "The wife asked for the judgments to be set aside but she did not seek to set aside the property settlement agreement. The granting of the motion cannot be interpreted as giving more relief than requested." (*In re Marriage of Testa*, 149 Cal.App.3d 319, 321 (Cal. Ct. App. 1983))

9

On 12-04-2015, Polina filed a Proposed Order After Hearing re 11-03-15 without serving Arthur. It has been discovered that Polina and her attorney deliberately failed to serve documents, faked proof of service, or falsely testified that they were not served. Polina consented that she and her attorneys used that scheme. (*Id*. ¶¶136-144)

After discovering that two Orders After Hearings (OAH) had been filed on 01/26/2016 and were not served, Arthur initiated a fruitless search for those documents. (Id. ¶146)

On 02/18/2016, Fernandez filed an Ex Part Application requesting the Clerk's execution of the Interspousal Transfer Deed on Arthur's behalf. Fernandez falsely testified that Exhibits "A" - "K" were attached to the declaration. The Declaration has no exhibits. Ex Parte was denied. Fernandez refiled it as a regular motion set for hearing on 03/23/2016. (*Id*. ¶147)

On 03/11/2016, Fernandez lied regarding jurisdiction over the execution of the Deed and filed the Motion and Civil Complaint for Causes of Action for: Fraudulent Transfer [Civil Code §3439, et. seq.] and Declaratory Relief [CCP §1060, et. seq.]. There is no proof of service on record. (Id. ¶¶148-151)

On 03/23/2016, Fernandez requested that the Interspousal Transfer Deed be signed and executed on Arthur's behalf. The Court ordered Fernandez to prepare and serve a Finding and OAH, which he failed to do. (*Id*. ¶¶152-153) On 06/09/2016, the court rejected the OAH, stating: "Not approved as to form &

10

content, and no proof of service on Petitioner attached." The document was returned to Fernandez. Arthur was unaware of that fact and discovered it at the end of September 2023. Fernandez concealed the Notice of Rejection. (Id. ¶¶176-179)

The Court in *Christie v. City of El Centro*, 135 Cal.App.4th 767, 776-77 (Cal.Ct. App. 2006) held that although a party should act diligently, he or she is not required to launch a search to discover information that a judicial officer should have disclosed.

On 04/26/2016, Fernandez lied that Juhas reserved jurisdiction over the Joinder. Furthermore, Fernandez lied about Arthur testifying, and Juhas noted that Arthur didn't receive valid consideration on all of these notes. (Id. ¶¶154-160)

On 05/10/2016, on Polina's behalf, Fernandez associated Block. Using a corrupt clerk of the Court's Archive, Block fraudulently evicted Arthur. (Id. ¶¶164-170)

On 08/02/2016, Fernandez, on behalf of Polina, falsely and maliciously accused Arthur and members of his family of fraud and filed a Complaint for Civil Cause of Action for Fraudulent Transfer [Civil Code §3439, et. seq.] and Declaratory Relief [CCP §1060, et. seq.] in the Family Law case BD512645. No Summons were issued and filed. The Complaint was not served. Polina requested that the Court declare and confirm that the Via Milagro Property is Polina's sole and separate property and that Arthur does not have any valid legal equitable and/ or beneficial ownership interest. *The Court has not declared and confirmed that*

11

*the Via Milagro Property is Polina's sole and separate property.* (Id. ¶¶184-188)
Polina's Complaint is pending in the Family Court. The Court refuses to dismiss it.

On 06/07/2017, Shulman took a torch of fraudulent, malicious prosecution and abuse of process, aiding Polina in stealing and keeping the Valencia property. Shulman lied that on 06/20/2017, she filed a Summons for the Complaint filed by Fernandez. Contrary to Shulman's lie, Fernandez lied that he filed a Summons on 08/01/2016) (Id. ¶¶190-193)

On 08/15/2017, Arthur filed a cross-complaint, which the Court ruled shall stand. On 09/11/2017, the Court noticed no proof of service was on file indicating that Arthur was served with an RFO. On 09/29/2017, Shulman asked the Court to be Relieved as Counsel, testifying that Polina refused to pay the bill of \$5,898.30 (Id. ¶¶194-207)

On 11/28/2017, Kozich appeared in the case briefly to continue proceeding with malicious prosecution and abuse of the process, lying to the court. (Id. ¶¶208-214)

Despite the court notice that the Respondent couldn't file a Request for Default, and claimants filed an answer on 11/02/2018, the default was entered against the claimants on 11/08/2018. (Id. ¶¶223-226)

On 05/17/2019, the Court again fraudulently moved the case to Juhas. After Arthur's numerous objections and Notice of Disqualification, he confessed that the case was improperly before him. (Id. ¶¶227-242)

On 10/03/2019, Judge Hansell picked up the torch and continued aiding

Polina in her malicious prosecution, fraud, and theft of real property. Hansell

openly lied and faked statutes, cases, evidence, and testimonies. Hansell bluntly

advocated Polina and dismissed Arthur's cross-complaint in violation of the court

order of 08/15/2017. Despite Arthur's numerous objections and Notices of

Disqualification, Hansell refused to disqualify himself. He conducted a travesty

Default Prove-Up Trial. He used his not-served Exhibits and disregarded Polina's.

Despite the granted motion to quash service, Hansell entered a default against

claimant Shirinyan. The Appellate Court reversed Hansell's ruling. Polina

disobeyed the Appellate and Trial court order re Shirinyan.

Despite the case reassignment order on 03/19/2021, Hansell kept the case in

his department. Finally, on 06/15/2022, Hansell recused himself. (Id. ¶¶260-333)

On 10/17/2022, Gould-Saltman falsely stated in her Order that the case was

reassigned to Judge Swift by the Supervising Judge of Family Law. No such order

is in the record. (*Id.* ¶¶334-339)

Swift falsified the record and statutes, circumvented the law, advocated for

Polina, and protected her. (*Id.* ¶¶340-357)

## B. LASC CASE NO.: BC680322

Due to Polina's fraudulent Complaint, Arthur initiated a civil action

BC680322. On 10/09/2018, Arthur filed SAC. Judge Draper fraudulently granted

Kozich's Demurrer to FAC when SAC was already operative. (*Id.* ¶¶371-385)

13

Draper also fraudulently granted Block's anti-SLAPP motion to FAC when it was nil and SAC was operative. (*Id.* ¶¶386-396, 404-405)

*Polina failed to serve Arthur with her undated and unsigned answer to SAC.* (Id. ¶397)

Draper obstructed justice, deprived Arthur of the Right to Discovery, and attempted to dismiss the action, dismissed it, and then vacated its order. Draper falsely found Arthur in Contempt of Court, then vacated it. (Id. ¶¶398-403, 406-474)

On 06/02/2023, Judge Feeney picked up a torch from Draper. Feeney did her best to obstruct justice and dismissed the action. She admitted that she continued Arthur's motions 22 hours before a hearing and continued them to hear the Court's motion to dismiss first, *i.e.*, dismiss the action. First, Judge Feeney intended to dismiss it as a frivolous action. After Arthur's argument, just before the hearing, she changed her basis from frivolous to dismissal under the doctrine of *res judicata. In the end, she DISMISSED the action without any basis. (Id.* ¶¶475-498)

## C. 22STCV18171/B326148

On 06/03/2022, Arthur filed a Complaint for Damages for the following causes of action: (1) fraud, (2) Defamation, (3) Malicious Prosecution, (4) Conspiracy, (5) Intentional Infliction of Emotional Distress, (6) Punitive Damages, against Polina, Fernandez, Shulman, and Kozich. Arthur alleged that the Court erroneously granted anti-SLAPP Motions to Fernandez, Shulman, and Kozich.

14

Arthur appealed. Polina defaulted. (Id. ¶¶499-502)

Arthur presented irrefutable evidence that Fernandez committed fraud on the court. (Id. ¶¶503-505) Following Arthur's Reply Brief, Fernandez's attorney, Barney, filed a Motion to Declare Arthur a Vexatious Litigant, which was raised for the first time. (Id. ¶¶506-518)

Arthur filed a Motion To Hold Fernandez in Contempt of Court. (Id. ¶519) California Supreme Court stated in In re Aguilar (2004) 34 Cal.4th 386, 394: "[A]n intentionally false statement made by an attorney to a court clearly constitutes a contempt of court." (See, e.g., Vaughn v. Municipal Court (1967) 252 Cal.App.2d 348, 358 [false statement of fact by attorney in open court, i.e., not under oath, held to be sufficient basis to sustain contempt conviction].) Kobayashi v. Superior Court (Douglas Han), 175 Cal.App.4th 536, 543 (Cal. Ct. App. 2009)

Justices Zukin, Collins, and Mori confirmed the low Court's ruling, dismissed the Motion for Contempt, and declared Arthur a Vexatious Litigant. The Justices exhibited bias and acted in a manner that did not promote public confidence in the integrity and impartiality of the judiciary. Furthermore, Mori was the presiding judge in the same case. Justices protected Fernandez and other defendants. It is undeniable and irrefutable that Exhibit EF was fabricated, the property was fraudulently awarded to Polina, and numerous frauds on the Court occurred. Justices objected to justice and became involved in the scheme to deprive Arthur of the Constitutional Right to Petition. (Id. ¶¶520-535)

15

## D. VOID CHILD SUPPORT ORDER

Since 2017, Arthur has received $221 from the county-funded program "General Relief" (GR), which was his only income. The Court ordered him to pay $636 in child support. Noteworthy, the Child Support Services Department filed a Motion to Modify the Child Support to zero. However, during the hearing, the staff attorney, Gonzalez Totten, lied and requested, "So, your honor, this is the county's motion to modify. Perhaps the Court would just deny it or take it off the calendar." The Court ruled: "The Court is denying the motion brought by the county. And if Mr. Tsatryan is not able to make the payment, then they will accumulate, and interest will continue to accrue on the monies that are not paid." Though Gonzalez Totten was delegated to support the Department's Motion, she conspired with Polina, lied, and influenced the Court to make an unenforceable order. It is irrefutable that paying monthly child support of $636 is impossible as a GR recipient of $221. "An unenforceable order is no order at all and thus is void" (*In re Marriage of Condon*, 62 Cal.App.4th 533, 562 (Cal. Ct. App. 1998) (Id. ¶¶358-359)

On 07/14/2022, Arthur filed a Request to Vacate the Void Order. "'Polina filed a Responsive Declaration full of falsified and fabricated facts. In her Declaration, Polina unfoundedly requested to increase the child support, "holding the Petitioner in **"Contempt" of Court and punish Petitioner in imprisonment for 2 years**." [sic]'" (*Id*. ¶362)

16

At the hearing, Judge Young denied Arthur's request to continue the hearing due to the unavailability of the Court Reporter. The Child Support Service Department Staff Attorney Hardie deceived the Court. Young denied Arthur's request to Void an unenforceable order. (Id. ¶¶360-369) Due to the unenforceable, void order, Arthur's license and passport were suspended.

On 02/01/2023, Arthur filed a Civil Action 23STCV02122 for Damages for the following causes of action: (1) Abuse of Process; (2) Civil Conspiracy; (3) Fraud/Fraud on the Court; (4)Violation of Civil Rights Act of 1964; (5) Intentional Infliction of Emotional Distress; (6) Claim for Equitable, Declaratory, and Injunctive Relief. (Id. ¶¶536-538)

Defendant Brenner, representing Totten Gonzalez and Hardie, filed anti-SLAPP Motions and lied. Polina filed a boilerplate Demurrer and failed to serve Arthur. It is unclear how Polina's Demurrer was filed if she failed to obtain a mandatory Reservation for the Hearing and failed to pay the mandatory fee for the Demurrer. *The Court had no power to accept and consider any Motion without fee payment. The Court acted beyond its jurisdiction by accepting the Motion without a mandatory fee paid for the Motion*

Arthur filed Requests for Entry of Default against all defendants. Judge Chang falsified records, omitted essential facts, and lied. Chang granted the defendants' anti-SLAPP Motion and SUSTAINED Polina's Demurrer without leave to amend in violation of law. Furthermore, Chang amended Polina's

17

Proposed Judgment without a Notice of Amended Proposed Judgment being served. (Id. ¶¶539-571)

## E. APPELLATE JUSTICES

All of Arthur's appeals, but one, were before Division Seven. Justices lied, falsified records, omitted essential facts, and falsely disregarded judicial notices as irrelevant. The way Justices rigged the case B265467 is unimaginable. No reasonably prudent person would believe that paying a $4,500 mortgage from only a $800 monthly income is possible. "The trier of the facts may not believe impossibilities." (*Hicks v. Reis* (1943) 21 Cal.2d 654, 660; see also *Gaffney v. Downey Savings Loan Assn.* (1988) 200 Cal.App.3d 1154, 1168) Justices held in B265467 Opinion: "Arthur refers to evidence he presented regarding his income was only $800 per month but makes no mention of the cross-examination regarding his ability to pay the expenses for the Santa Clarita property, which he claimed to have paid, from that amount." There is no such record. The Justices lied. (Id. ¶¶572-584)

In B262680, Justices provided two conflicted statements regarding the child's testimony. On page 7, justices held that the child testified that he preferred to live primarily with his father because his mother was not taking him to extracurricular activities and did not pay sufficient attention to him. On page 12, Justices held: "Alex never testified that he wanted Arthur to have sole custody over him." (Id. ¶¶587-588)

18

In B270784-B276299, justices faked that Polina requested a relief to grant her 100% of the property. The record does not indicate that Polina requested relief to grant her 100% of the property. (supra, infra) (*Id.* ¶589)

## F. NOTICES OF DISQUALIFICATIONS

On 07/24/2020, Arthur filed Notices of Disqualification against Perluss, Zelon, and Feuer. On 08/05/2020, through the truefiling.com website, Arthur filed Notices of Non-Opposition of Perluss, Zelon, and Feuer to Arthur's Verified Statements. On 08/17/2020, Arthur filed Motions to Compel the Disqualification of Perluss, Zelon, and Feuer. However, the Court deleted the filed Motions from the truefiling.com website and substituted them with irrelevant documents. On 10/29/2021, Arthur contacted the truefiling technical support representative. On 11/02/2021, the Motions to Compel Disqualification were pulled from the "cloud" and reinstated on the truefiling website with the stamp "**Electronically FILED on 8/17/2020 by Deputy Clerk.**" [sic] It is a criminal offense to destroy material to impair its availability in a pending proceeding or on those commencements can be foreseen. (See, e.g., Pen Code §135; 18 U.S.C. §§1501-1520) Falsifying evidence is also generally a criminal offense. (See, e.g. Pen. Code §132; 18 U.S.C. §1519) (*Id.* ¶¶591-601)

On 10/16/2023, Arthur filed a Motion to Disqualify Perluss and Feuer with a request to place the Motion for a hearing in B323246. The Court failed to file an order denying the Motion. On 08/08/2024, Arthur objected to having an oral

19

argument before Feuer and Segal due to their constant lies. (*Id.* ¶¶602-606)

During the oral argument on 08/08/2024, Arthur a few times, emphasized to the author of the many lies in the Opinions, Feuer, that there is no record of Summons. As such, the Summons could not be served. Nevertheless, Feuer wrote in the Opinion that Arthur does not dispute that the court clerk issued a summons. Arthur quoted three excerpts from AOB and attached an Exhibit to support Arthur's claim that Feuer lies and obstructs justice. California Supreme Court has applied the "doctrine of chances," which provides "[T]he more often one does something, the more likely that something was intended, and even premeditated, rather than accidental or spontaneous." (*People v. Steele*, 27 Cal.4th 1230, 1244, 120 Cal. Rptr. 2d 432, 47 P.3d 225 (Cal. 2002) (*Id.* ¶¶607-614)

On 10/17/2024, Arthur filed Verified Complaint for the following causes of actions: (1) Fraud; (2) Fraud on the Court; (3) Breach of Fiduciary Duty; (5) Conspiracy to Commit Fraud; (6) Receipt of Stolen Property; (7) Conversion; (8) Deceit; (9) Obstruction of Justice; (10) Aiding and Abetting to Commit Fraud; (11) Unlawful and Unfair Business Practice; (12) Intentional Infliction of Emotional Distress; (13) Punitive Damages; (14) Equitable Relief; (15) Declaratory Relief; (16) Deprivation of Federal Civil Rights (48 U.S.C. §1983). (Id. at pp. 1-2)

On the same day, 10/17/2024, Arthur filed a Request to Proceed In Forma Pauperis. *The Court ruled that Arthur could not pay the filing fees but DENIED the request.* (Dkt. No. 45, at 1) On 11/07/2024, before issuing the Summons the district

20

court issued an order dismissing the complaint "without prejudice" but without leave to amend. (Dkt. No. 45, at 1) Since the complaint was dismissed before service, the appeal is unopposed.

## V. STANDARD OF REVIEW

"Because Plaintiff is proceeding pro se, the Court liberally construes the Complaint and resolves all doubts in his favor." See *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) *The court must grant leave to amend if it appears that Plaintiff can correct the defects in his Complaint, Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000), *but if a claim or complaint cannot be saved by amendment, **dismissal with prejudice** is appropriate. Sylvia Landfield Tr. v. City of L.A.*, 729 F.3d 1189, 1196 (9th Cir. 2013); see also *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008) (reiterating that a district court may deny leave to amend for, among other reasons "repeated failure to cure deficiencies by amendments previously allowed . . . [and] futility of amendment") (citation omitted)." *Plotkins v. Cnty. of Kaua'i, Fin. Div. Real Prop. Assessment, Civ.* 24-00019 JMS-KJM, 4-5 (D. Haw. Apr. 30, 2024)

The Court in *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir. 1989) held: "The Supreme Court has long held that courts must construe pro se complaints liberally, applying less stringent standards than when a plaintiff is represented by counsel. *E.g., Hughes v. Rowe*, 449 U.S. 5, 9, 101 S.Ct. 173, 175, 66 L.Ed.2d 163 (1980) (per curiam); *Haines v. Kerner*, 404 U.S. 519, 520, 92 S.Ct. 594, 595, 30 L.Ed.2d

21

652 (1972) (per curiam); see also *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983) (per curiam)".

The Court is obliged to construe pro se pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they suggest," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

The Court must dismiss an in forma pauperis complaint, *or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.* 28 U.S.C. § 1915(e)(2)(B); see *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998).

A claim is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989), abrogated on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); see also *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (holding that "finding of factual frivolousness is appropriate when the facts alleged rise to the level of the irrational or the wholly incredible"); *Livingston*, 141 F.3d at 437 ("[A]n action is 'frivolous' when either: (1) the factual contentions are clearly baseless . . .; or (2) the claim is based on an indisputably meritless legal theory." (internal quotation marks and citation omitted))

22

## VI.  SUMMARY OF ARGUMENT

District Court dismissed the case on several grounds. First, the court has no jurisdiction to order a new trial in state court based on alleged errors in prior state court proceedings. Second, any allegations of perjury or *intrinsic* fraud during the state court trial should have been addressed in the state court. Third, even if the *Rooker-Feldman* doctrine did not bar the claims, they would still be barred by collateral estoppel. Per the District Court's erroneous opinion, the California Court of Appeal has repeatedly rejected the plaintiff's allegations of fraud by his former wife or her attorneys.

The plaintiff argues that the record indicates that the dissolution judgment did not award his former wife 100 percent of the residence. The plaintiff also claims that fabricated evidence was used at the trial, which was discovered only recently. The court's dismissal is considered premature, as the complaint alleges sufficient facts to suggest potentially meritorious claims. The plaintiff asserts that extrinsic fraud, such as fabricating evidence, differs from intrinsic fraud and should be considered.

The *Rooker-Feldman* doctrine does not apply as the plaintiff is not seeking a review of the state court's decision. The plaintiff's claims are based on the defendants' alleged illegal acts, not on the state courts' legal errors. The Ninth Circuit's two-step approach to the *Rooker-Feldman* doctrine is discussed. The plaintiff's claims are not barred as they are independent claims not previously

judged by the state court. The court's application of collateral estoppel is also challenged, as the issues of fraud and fraud on the court were not previously litigated.

The plaintiff argues that extrinsic fraud allows for attacking the integrity of evidence after the proceedings have concluded. The court's reliance on intrinsic fraud cases is seen as an error. The plaintiff's claims include fraud, breach of fiduciary duty, and obstruction of justice, among others. The complaint provides detailed allegations supporting these claims. The plaintiff seeks redress for alleged illegal acts separate from the state court's dissolution decision.

## VII. ARGUMENT

"*Sua sponte dismissal of a pro se complaint prior to service of process is a "draconian device*", *Elliott v. Bronson*, 872 F.2d 20, 21 (2d Cir. 1989); *Robles v. Coughlin*, 725 F.2d 12, 15 (2d Cir. 1983), which is warranted only when the complaint "lacks an arguable basis either in law or in fact." *Neitzke*, 109 S.Ct. at 1831; see *Robles*, 725 F.2d at 14 ("frivolous on its face or wholly insubstantial"). Where a colorable claim is made out, dismissal is improper prior to service of process and the defendants' answer. *Robles*, 725 F.2d at 16; *Cunningham v. Ward*, 546 F.2d 481, 482 (2d Cir. 1976); see *Neitzke*, 109 S.Ct. at 1834." *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990)

Arthur has stated a colorable claim that his due process rights were violated, the defendants committed fraud upon the court, and he was hampered in the

24

preparation of his litigations.

District Court relied on the following grounds for dismissal:

(1)     "Plaintiff requests that the state court dissolution judgment be set aside and that a new trial be ordered." "First, the Court has no jurisdiction to order a new trial in state court based on alleged errors in prior state court proceedings."

(2)     "Second, to the extent that Plaintiff alleges Defendants lied during the state court proceeding, he was required to seek his remedy in the state court, not federal. See *Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478, 480-81 (9th Cir. 2018) (litigant complaining of perjury, or *intrinsic fraud*, during her state court trial was required to seek her remedy during trial or in post-trial motions, which were her "*opportunity for making the truth appear*") see also *Clark v. State of California*, 2022 WL 1511772, at *6 (C.D. Cal. Feb. 24, 2022) (perjury, or *intrinsic fraud*, does not raise an exception to the jurisdictional bar of *Rooker-Feldman*).

(3)     "Third, even if it is assumed for purpose of argument that Plaintiff's claims were not barred by the *Rooker-Feldman* doctrine, they nonetheless would be barred by collateral estoppel. The California Court of Appeal has repeatedly rejected Plaintiff's allegations that his former wife or her attorneys committed fraud upon the state court. See *Tsatryan v. Fernandez*, Cal. Ct. of Appeal Case No. B326148, 2024 WL 1735184, at *2 (2024); *In re Marriage of*

25

*Tsatryan,* Cal. Ct. of Appeal Case No. B265467, 2018 WL 833694, at \*3 (2018).

Thus, the issue "cannot again be litigated between the same parties in any future

lawsuits." *United States v. Smith-Baltiher,* 424 F.3d 913, 919 (9th Cir. 2005)

(Dkt. No. 45 at 2)

## A. JUDGE MARSHALL FALSIFIED AND MISCONSTRUED RECORD

In her first ground for dismissal, Judge Marshall improperly construed the

Complaint. She stated: "As part of the judgment of dissolution, Plaintiff's former

wife was awarded 100 percent of their former marital residence. (Id. at 16, 69.)"

*(Id.* p. 2) Judge Marshal falsified the record. Nowhere on page 16 or 69 is a record

that Polina was awarded 100 percent of their former marital residence as part of the

Judgment.

### i. Page 16.

Page 16 exhibits in relevant part, "It is undisputed that all documents to

support the fraudulent transfer of the Santa Clarita property were falsified,

destroyed, or hidden by the Defendants and the Court, impairing its availability in

the pending proceeding. (*e.g.*, Exhibit EF, presented surprisingly at the Trial on

02/27/2015, Supplemental Addendum to Purchase Agreement and Escrow

Instruction. Exhibit EF was never served or provided to Arthur or included in the

Court record. Fabricated Exhibit EF was a basis for the Trial Court's false ruling to

find Arthur's sole and separate property to be community property.)" (Dkt. No 2, at

16)

### ii. Page 69.

Page 69 exhibits the following:

"... the equity because we're alleging this is a 3294, Civil Code section 3294 breach of fiduciary duty.

129 ... *The request to vacate the Judgment was denied.* Judge Juhas ruled: "... [I] think that while I can't evict him (Arthur), I can give her exclusive use and possession of the home, because it's now awarded to her as her sole and separate property." (RT 11/03/2015, 106:5-8) *Juhas granted Polina 100 percent of the property, the relief she didn't request.* Arthur's objection and argument that Juhas couldn't award relief without requesting it got into Juhas' deaf ear. (see *In re Marriage of Testa*, supra)

130. At the hearing³, the following discourse occurred:

**ARTHUR:** They both - they didn't ask for relief of that. The did not.

**JUHAS:** **Okay. Because that's the only way to effectuate this order.** (emphasis added) (RT 11/03/2015, 107:8-10)

131. Juhas knew or was supposed to know that he had no power to grant Polina 100 percent of the Valencia property. As such, **the order is Void.** (emphasis added) Juhas conspired and aided Polina in stealing the property. Juhas committed

---

³ It was a post-judgment hearing in which Juhas had no authority. His authority ended per the court order of 04/03/2013, with the judgment entered on 05/21/2015.

fraud on the Court. (See *Kenner v. C.I.R.*, 387 F.3d 689 (1968); 7 Moore's Federal Practice, 2d. wd., p. 512, ¶60.23 defines this crime as preventing the court from working impartially. A similar case, *Bulloch v. United States*, 763 F.2d 1115, 1121 ..." ). (Dkt. No. 2, at 69) In *Sosnick v. Sosnick*, 71 Cal.App.4th 1335, 1340 (Cal. Ct. App. 1999), the Court held, "Any act which exceeds the defined power of a court in a given instance, whether that power is defined by constitution, statute, or decisional law, is in excess of the court's jurisdiction. (*Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 288, at p. 291)

Further, Judge Marshall states: "Plaintiff unsuccessfully appealed *the judgment*, on 17 occasions, before the California Court of Appeal. (Dkt. No. 45 at 2) There is one final judgment in action (*Evans v. Dabney*, 37 Cal. 2d 758, 235 P2d 604 (1951); *De Vally v. Kendall De Vally Operalogue Co*, 220 Cal. 742, 32 P.2d 638 (1934); *Middleton v. Finney*, 214 Cal. 523, 6 P.2d 938, 78 A.L.R. 1104 (1931); *Cuevas v. Truline Corp.*, 118 Cal. App. 4th 56, 12 Cal. Rptr. 3d 706 (2d Dist. 2004); As to the one final judgment rule concerning appeals, (see Cal. Jur. 3d, Appellate Review §§ 26 to 34.) As such Judge Marshall's statement is nonsense and doesn't deserve an argument. Though noteworthy, the doctrine of *res judicata* would preclude a second appeal.

## B.   COURT'S FIRST GROUND FOR DISMISSAL

The Court misconstrued the Complaint, stating: "First, the Court has no jurisdiction to order a new trial in state court based on alleged errors in prior state

28

court proceedings." (Dkt. No. 45, at p. 2)

The Court stated that on page 250 of the Complaint, Plaintiff requests that the state court dissolution judgment be set aside and that a new trial be ordered. (*Ibid.*) Judge Marshall took things out of context. The following is a relevant excerpt from page 250.

"(2)    For declaration against Polina and any other person declaring and confirming that the Valencia Property is Arthur's sole and separate property and that Polina and only other person do not have any valid legal, equitable , and/or beneficial ownership interest therein.

(3)    That the Judgment of May 21, 2015, be set said and **declared void as a violation of due process**, fraud, and **fraud on the Court**. (emphasis added)

(4)    For a new Family Law Trial. The Court in *Hernandez v. First Student, Inc.*, 37 Cal.App.5th 270, 286 (Cal. Ct. App. 2019) held that attorney misconduct can justify a new trial if it is reasonably probable that the party moving for a new trial would have obtained a more favorable result absent the misconduct. (*Cassim v. Allstate Ins. Co.*, 33 Cal.4th 780, at 801-802, (Cal. 2004)" (Dkt. No. 2, at 250)

*Violation of due process and fraud on the Court are within the jurisdiction of the Federal District Court.* Subsequently, should the Court find a violation of due process and fraud on the Court, the Judgment shall be set aside. If a judgment is set aside, then a new trial is required. As such, applying these general principles, this Court shall be convinced that the District Court acted prematurely in dismissing

29

this complaint. Liberally construed, the Complaint alleges sufficient facts to suggest potentially meritorious claims that Arthur was deprived of due process and equal protection in violation of the Fourteenth Amendment. If anything, the Complaint provides too much rather than too little detail supporting these claims.

Furthermore, Judge Marshall states: "First, the Court has no jurisdiction to order a new trial in state court based on alleged errors in the prior state court proceeding. "The United States District Court, as a court of original jurisdiction, has no authority to review the final determinations of a state court in judicial proceedings." *Worldwide Church of God v. Mc.Nair*, 805 F.2d 888, 890 (9th Cir. 1986) (discussing the Rooker-Feldman doctrine). It makes no difference that Plaintiff alleges the state court proceeding violated his constitutional rights. See *Hooper v. Brnovich*, 56 F.4th 619, 622 (9th Cir. 2022) (per curium) ("Because [Plaintiff] in fact challenges the particular outcome in his state case, it is immaterial that [he] frames his federal complaint as a constitutional challenge to the state court's decision, rather than as a direct appeal of that decision.") (Dkt. No.45 at 2)

Judge Marshall improperly applied the *Hooper v. Brnovich* case. "In Hooper, the Plaintiff, Murray Hooper, had previously moved under state law for an order to permit him to conduct DNA and fingerprint analysis on a crime scene." "In short, he claims that the state courts decided his case incorrectly" *Hooper v. Brnovich*, 56 F.4th 619, 625 (9th Cir. 2022). *Nowhere in the Complaint Arthur claims that the*

30

*state courts decided his case incorrectly.*

First and foremost, the fact that Exhibit EF was fabricated at the trial was discovered recently, and that fact was never a basis for any action. After Arthur presented evidence on 01/02/2024 that Exhibit EF was fabricated, Defendants moved the appellate court for the Request to Declare Arthur a Vexatious Litigant for the first time on 01/04/2024, after the case was fully briefed. Besides that fact, sixteen causes of action in the Complaint are not subject to the Family Law Court and *were not the subject of a previous judgment by the state court.* (See *Cooper*, 704 F.3d at 778, infra)

The Court in *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) held: "To determine whether an action functions as a de facto appeal, we 'pay close attention to the relief sought by the federal-court plaintiff.' " *Cooper*, 704 F.3d at 777–78 (quoting *Bianchi v. Rylaarsdam*, 334 F.3d 895, 900 (9th Cir. 2003)). A "forbidden de facto appeal under Rooker-Feldman " arises "when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state Court and seeks relief from the judgment of that court." *Noel v. Hall*, 341 F.3d 1148, 1163 (9th Cir. 2003). But Rooker-Feldman "*does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court.*" *Cooper*, 704 F.3d at 778 (quoting *Skinner*, 562 U.S. at 532, 131 S.Ct. 1289 ). Thus, "a statute or rule governing the [state court's] decision may be challenged in a federal

31

action." *Skinner*, 562 U.S. at 532, 131 S.Ct. 1289.

If a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court and seeks relief from a state court judgment based on that decision, Rooker-Feldman bars subject matter jurisdiction in federal district court. *If, on the other hand, a federal plaintiff asserts as a legal wrong an allegedly illegal act or omission by an adverse party, Rooker-Feldman does not bar jurisdiction. Plotkins v. Cnty. of Kaua'i, Fin. Div. Real Prop. Assessment*, Civ. 24-00019 JMS-KJM, 5-6 (D. Haw. Apr. 30, 2024)

Fabricating Exhibit EF, purchased documents for real property, is an illegal act; to evict Arthur by fabricating a Writ of Possession of Real Property is an illegal act; obstruction to justice is an illegal act, etc. "The party procuring a judgment against another without due process of law, or by fraud, takes it at his peril, . . ." *City of Los Angeles v. Morgan*, 105 Cal.App.2d 726, 732 (Cal. Ct. App. 1951) An instrument that is void ab initio is comparable to a blank piece of paper and so necessarily derives no validity from the mere fact that it is recorded. (*Cf. New England Bond Mortgage Co. v. Brock*, 270 Mass. 107 [ 169 N.E. 803, 68 A.L.R. 371].) As a consequence, the record thereof is not constructive notice of its contents or of the fact that it is recorded. The purpose of our recording statutes (Civ. Code, §§ 1213-1215) is to give notice to prospective purchasers or mortgagees of land of all existing and outstanding estates, titles, or interests in it, whether valid or invalid, which may affect their rights as bona fide purchasers and

so as to protect them before they part with their money. Accordingly, it is obvious that invalid documents are not entitled to be recorded, but if they are recorded, they do not give constructive notice. (45 Am.Jur. 481; cf. *Meley v. Collins*, 41 Cal. 663 (Cal. 1871) [10 Am.Rep. 279] (forged deed).) *City of Los Angeles v. Morgan*, 105 Cal.App.2d 726, 733 (Cal. Ct. App. 1951)

## C.   ROOKER-FELDMAN DOCTRINE

The Rooker-Feldman doctrine does not apply to this case as Arthur is not seeking a review of the California Court of Appeal's decision. Fraud and Fraud on the Court were committed by defendants when they fabricated evidence presented at Trial on 02/27/2015. (Dkt. No.: 2, ¶¶110-114) The fraud was discovered on 12/20/2022 and has not been an issue yet. (Id. ¶112) "Defendant knowing the use of false evidence or argument to obtain a favorable ruling deprived Plaintiff of due process (See *People v. Sakarias* (2000) 22 Cal.4th 596, at p. 633 [*People v. Morrison*, 34 Cal.4th 698, 713 n.5 (Cal. 2004)" (Dkt. No.: 2 ¶120)

There is no record that the state Court decided the question of fraud and fraud on the court regarding the fraud discovered on 12/20/2022. No record indicates that the federal petition sought precisely the same relief denied by the state trial court. A forged document is void ab initio and constitutes a nullity; as such, it cannot provide the basis for a superior title as against the original grantor. "An instrument that is void ab initio is comparable to a blank piece of paper and so necessarily derives no validity from the mere fact that it is recorded." (*City of Los*

33

*Angeles v. Morgan*, 105 Cal.App.2d 726, 733 (Cal. Ct. App. 1951))

"The Ninth Circuit takes a two-step approach to the Rooker-Feldman doctrine. First, the court must determine whether the plaintiff is seeking a "forbidden de factor appeal" of a state court judicial decision. *Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir. 2003). Then, and "[o]nly when there is already a forbidden de facto appeal" found, must the court consider whether the issues in the federal case are so "inextricably intertwined" with the state court judicial decision from which the forbidden appeal arises. *Id.*

"To determine whether an action functions as a de facto appeal, we pay close attention to the relief sought by the federal court plaintiff." *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022) (internal quotations omitted). "A 'forbidden de facto appeal under Rooker-Feldman' arises 'when the plaintiff in federal district court complains of a legal wrong allegedly committed by the state court and seeks relief from the judgment of that court.'" *Id.* (quoting *Noel*, 341 F.3d at 1163)."
*Langadinos v. Wash. State Bar Ass'n*, 2:23-cv-250, 8-9 (W.D. Wash. Mar. 15, 2024)

Next, the Court must determine what issues are "inextricably intertwined" with Plaintiff's forbidden appeal. "'Claims are inextricably intertwined if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.'" *Hooper*, 56 F.4th at 624-25 (quoting *Cooper v. Ramos*, 704 F.3d 772, 779 (9th Cir. 2012))." *Langadinos v. Wash. State Bar Ass'n*, supra)

Arthur's causes of action differ from the state court dissolution judgment,

34

erroneously construed by Judge Marshall or any other action. (infra) While Arthur's claims are perhaps intertwined with the state court decision "[i]n an ordinary language sense," they fall outside the "specialized meaning" of "inextricably intertwined" for Rooker-Feldman purposes. (See *Langadinos v. Wash. State Bar Ass'n*, supra), quoting *Kougasian v. TMSL, Inc.*, 359 F.3d 1136, 1142 (9th Cir. 2004).

The Ninth Circuit analyzed this distinction in *Kougasian*. There, a widow filed two unsuccessful state court lawsuits against the operator of a ski area following her husband's death. (Id. at 1137-39) She later filed a federal lawsuit under diversity jurisdiction and asserted seven causes of action, including *extrinsic fraud on the state court*, (emphasis added) wrongful death, premises liability, *and intentional and negligent infliction of emotional distress*. (Id. at 1139) The Ninth Circuit held that the Rooker-Feldman doctrine did not deprive the district court of jurisdiction, explaining as follows:

"[The plaintiff] *does not seek to set aside the judgments of the [state court] based on alleged legal errors by those courts. Rather, she seeks to set aside these judgments based on the alleged extrinsic fraud by the defendants that produced those judgments.* Nor does [the plaintiff] seek damages based on any alleged legal error by the state courts. Rather, *she seeks damages based on the alleged wrongful behavior of the defendants*. Id. at 1139. The Ninth Circuit held that, even in the absence of the plaintiff's fraud claims, Rooker-Feldman still would not bar her

35

other causes of action because she "does not allege legal errors by the state courts; rather, she alleges wrongful acts by the defendants, such as negligently designing the ski run and negligently placing or failing to remove the rock." Id. at 1142.

Like the plaintiff in *Kougasian*, Arthur seeks redress for allegedly illegal acts or omissions, separate from the state court decision about the dissolution. The harm stems from his claim that the defendants discriminated against him by fabricating evidence, misrepresenting facts (attorneys, judges, justices), falsely claiming filing summons, failing to serve essential documents, etc., (Dkt. No. 2 passim) and that conduct otherwise constituted the intentional infliction of emotional distress, eviction, aiding and abetting to stealing real property, suspension of the passport and license. Thus, Arthur's claims are not barred by the Rooker-Feldman doctrine. (See *Langadinos v. Wash. State Bar Ass'n*, supra)

Rooker-Feldman doctrine "does not preclude a plaintiff from bringing an 'independent claim' that, though similar or even identical to issues aired in state court, was not the subject of a previous judgment by the state court." *Cooper*, 704 F.3d at 778 (quoting *Skinner*, 562 U.S. at 532, 131 S.Ct. 1289 ). Thus, "a statute or rule governing the [state court's] decision may be challenged in a federal action." *Skinner*, 562 U.S. at 532, 131 S.Ct. 1289. *Hooper v. Brnovich*, 56 F.4th 619, 624 (9th Cir. 2022)

Arthur had not previously requested reliefs that arose from fraud and fraud upon the Court as requested in the Federal Complaint: *Claims for Fraud and Fraud*

36

*on the Court arose from fabricated Purchase Documents (Dkt. No. 2, Exhibit A),*
*Breach of Fiduciary Duty (duty to reveal that purchase documents were forged and*
*fabricated), Aiding and Abetting Breach of Fiduciary Duty, Conspiracy to Commit*
*Fraud, Receipt of Stolen Property, Conversion, Deceit, Obstruction of Justice,*
*Aiding and Abetting to Commit Fraud, Unlawful and Unfair Business Practice,*
*Deprivation of Federal Civil Rights (48 U.S.C.§ 1983), Declaratory Relief and*
*Equitable Relief (Re Passport and License) were not the subjects of a previous*
*judgment by the state court.* As such, the Rooker-Feldman doctrine "does not
preclude Arthur from bringing an 'independent claim' to the Federal Court.

Applying these general principles, this Court shall be convinced that the
district court acted prematurely in dismissing Arthur's complaint. Liberally
construed, the complaint alleges sufficient facts to suggest potentially meritorious
claims that the defendants' acts denied him due process, defrauded Arthur,
committed fraud on the Court, etc. If anything, the complaint provides too much
rather than too little detail supporting these claims. (See *Elliott v. Bronson*, 872
F.2d 20, 21-22 (2d Cir. 1989))

## D.   IN RE MARRIAGE OF MCNEILL

*In re Marriage of McNeill*, the Court held: "Wife argues the no-fault concept
of dissolution proceedings, the cornerstone of the 1970 Family Law Act, precludes
consolidation and the procedural order in which the cases were heard. There can be
no disagreement with this general proposition; the strong public policy of this state

37

is to eliminate fault as a ground for the dissolution of marriage and as a
consideration in the division of property. This, however, does not prohibit husband
and wife from pursuing appropriate civil remedies against one another. Here
husband sought to void the deed and the agreement, asked for damages resulting
from wife's fraud, and sought exemplary damages. Neither the existence of the
marital relationship nor the fact wife was contemporaneously seeking a dissolution
prohibited husband from his requested relief. Husband could have tested the
validity of the deed and agreement in the dissolution or by an independent action.
(*In re Marriage of Testa* (1983) 149 Cal.App.3d 319 [ 196 Cal.Rptr. 780].) But
**damages could not have been pleaded in the dissolution action; to be
compensated for fraud, husband had to file a separate civil action**." (emphasis
added) *In re Marriage of McNeill*, 160 Cal.App.3d 548, 556-57 (Cal. Ct. App.
1984)

Under the *In re Marriage of McNeill* authority, Arthur could not have
pleaded Fraud and Fraud on the Court in the Dissolution action. Arthur had to file a
separate civil action.

## E. COURT'S SECOND GROUND

Judge Marshall held: "Second, to the extent that Plaintiff alleges Defendants lied
during the state court proceeding, he was required to seek his remedy in the state
court, not federal. See *Kearney v. Foley & Lardner, LLP*, 747 F. App'x 478, 480-81
(9th Cir. 2018) (litigant complaining of perjury, or *intrinsic fraud*, during her state

38

court trial was required to seek her remedy during trial or in post-trial motions, which were her "*opportunity for making the truth appear*") see also *Clark v. State of California*, 2022 WL 1511772, at *6 (C.D. Cal. Feb. 24, 2022) (perjury, or *intrinsic fraud*, does not raise an exception to the jurisdictional bar of Rooker-Feldman).

Judge Marshall, supporting her argument that Arthur was required to seek his remedy in the state court, not federal, cited two cases, and none of them is applicable. They both are relevant to intrinsic fraud. In Arthur's case, the defendants committed extrinsic fraud. Extrinsic fraud is different from intrinsic fraud. Extrinsic fraud is a legal doctrine that refers to deceptive actions that occur outside of a legal proceeding and prevent a fair trial. Fabricating evidence, misrepresenting facts (attorneys, judges, justices), and filing a false return of summons are extrinsic frauds.

Furthermore, Arthur couldn't seek his remedy during or in the post-trial motion because, as indicated, the fabricated evidence Exhibit EF never has been served or provided to Arthur and never appeared in the record. Additionally, numerous documents were not served, missing from the record, and attorneys, judges, and justices kept misrepresenting facts. (see Dkt. No.: 2 passim) As such, Arthur was unable to make the truth appear in the state court.

The Court in *Cedars-Sinai Med. Ctr. v. Sup. Ct., Los Angeles Cty*, held that extrinsic fraud is an exception and allows a litigant to attack the integrity of

39

evidence after the proceedings have concluded. "'"[T]he law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation . . . . [¶] For our justice system to function, it is necessary that litigants assume responsibility for the complete litigation of their cause during the proceedings. To allow a litigant to attack the integrity of evidence after the proceedings have concluded, *except in the most narrowly circumscribed situations, such as extrinsic fraud,* would impermissibly burden, if not inundate, our justice system." (*Cedars-Sinai Med. Ctr. v. Sup. Ct., Los Angeles Cty*, 18 Cal.4th 1, 9 (Cal. 1998), quoting *Silberg v. Anderson*, 50 Cal.3d 205, at p. 214, 266 Cal. Rptr. 638, 786 P.2d 365 (Cal. 1990))

*Extrinsic fraud <u>does</u> raise an exception to the jurisdictional bar of Rooker-Feldman.*

## F.   COLLATERAL ESTOPPEL

Further, Judge Marshall held: "Third, even if it is assumed for purpose of argument that Plaintiff's claims were not barred by the Rooker-Feldman doctrine, they nonetheless would be barred by collateral estoppel. The California Court of Appeal has repeatedly rejected Plaintiff's allegations that his former wife or her attorneys committed fraud upon the state court. See Tsatryan v. Fernandez, Cal. Ct. of Appeal Case No. B326148, 2024 WL 1735184, at *2 (2024); In re Marriage of Tsatryan, Cal. Ct. of Appeal Case No. B265467, 2018 WL 833694, at *3 (2018).

40

Thus, the issue "cannot again be litigated between the same parties in any future lawsuits." *United States v. Smith-Baltiher*, 424 F.3d 913, 919 (9th Cir. 2005) (Dkt. No. 45 at 2)

The California Supreme Court says "'Collateral estoppel precludes relitigation of issues argued and decided in prior proceedings.' (*Lucido v. Superior Court* (1990) 51 Cal.3d 335, 341 [272 Cal. Rptr. 767, 795 P.2d 1223].) The doctrine applies "only if several threshold requirements are fulfilled. First, the issue sought to be precluded from relitigation must be identical to that decided in a former proceeding. Second, this issue must have been litigated in the former proceeding. Third, it must have been necessarily decided in the former proceeding. Fourth, the decision in the former proceeding must be final and on the merits. Finally, the party against whom preclusion is sought must be the same as, or in privity with, the party to the former proceeding." (*Pacific Lumber Co. v. State Water Resources Control Bd.* (2006) 37 Cal. 4th 921.)

Collateral estoppel, also known as issue preclusion, prohibits the same issue of fact or law from being litigated again. To be estopped, the issue of fact or law must have been necessary to the decision in the first case. *The party against whom it is asserted must have had a full and fair opportunity to litigate the issue in the prior case.* The Supreme Court of the U.S. in *Montana v. United States*, 440 U.S. 147, 155 (1979) defined the following three-prong test for applying collateral estoppel:

41

1.     Whether the issues presented in the subsequent case are substantially the same as those involved in the first case;

2.     Whether controlling facts or legal principles have significantly changed since the first case; and

3.     Whether other special circumstances warrant an exception to the normal rules of preclusion.

Collateral estoppel applies to an issue litigated in a *prior* action. Res judicata and collateral estoppel address preclusion of issues and claims after judgment: res judicata precludes a party from asserting a claim that was litigated in a prior action, while collateral estoppel precludes relitigating an issue decided in a prior action.

The crucial difference between claim preclusion and issue preclusion is that while claim preclusion can bar a party from raising a claim he or she failed to raise in a prior action, issue preclusion can bar only matters argued and decided in a prior lawsuit.

A review of the record dispels any doubt that the plaintiff ever raised the issue of fraud and fraud on the Court applying to fabricated evidence presented at trial on 02/27/2015. (supra)

Judge Marshall alleged that the California Court of Appeal has repeatedly rejected Plaintiff's allegations that his former wife or her attorneys committed fraud upon the state court. See Tsatryan v. Fernandez, Cal. Ct. of Appeal Case No. B326148, 2024 WL 1735184, at *2 (2024); In re Marriage of Tsatryan, Cal. Ct. of

42

Appeal Case No. B265467, 2018 WL 833694, at *3 (2018). Thus, the issue "cannot again be litigated between the same parties in any future lawsuits." *United States v. Smith-Baltiher*, 424 F.3d 913, 919 (9th Cir. 2005) (Dkt. No.: 45 at 2)

First, Judge Marshall alleged that she dismissed the complaint due to collateral estoppel, "Third, even if it is assumed for purpose of argument that Plaintiff's claims were not barred by the Rooker-Feldman doctrine, they nonetheless would be barred by collateral estoppel." As noted ante, collateral estoppel applies to an *issue* that has been litigated in a *prior* action.

But in her conclusion, Judge Marshall concluded: "Thus, the issue 'cannot again be litigated between the *same parties* in any future lawsuits.'" (*Ibid.*) While res judicata precludes the relitigation of claims involving the *same parties*, collateral estoppel applies to an issue that has been litigated even if the parties in the subsequent suit are completely unrelated to those of the first. None of the doctrines is applicable to the instant case.

First, only four defendants are in the first cited case Tsatryan v. Fernandez, Cal. Ct. of Appeal Case No. B326148, 2024 WL 1735184, at *2 (2024): Polina, Shulman, Kozich and Fernandez. (Dkt. No.: 2 ¶499) Thirty-four defendants are in the instant action. As such, four and thirty-four defendants can not mean "between the same parties".

Second, the LASC Case No. 22STCV18171, which was appealed under Cal. Ct. of Appeal Case No. B326148, for the following cause of actions: (1) fraud, (2)

43

defamation, (3) Malicious Prosecution, (4) Conspiracy, (5) Intentional Infliction of Emotional Distress, (6) Punitive damages was filed on *06/03/2022*. (*Ibid*.) On 12/08/2022, the Court granted anti-SLAPP Motions to Shulman, Kozich, and Fernandez. Fraud in Case No. 22STCV18171 did not and could not be based on the fabrication of Exhibit EF. Fabrication of the evidence Exhibit EF was discovered on 12/20/2022 and has not been an issue yet. (Id. ¶112) It could not be an issue in case B326148 or any other case filed before 12/20/2022.

On 12/30/2022, Arthur filed a Notice of Appeal in Cal. Ct. of Appeal Case No. B326148, for Superior Court Case No. 22STCV18171. The fraud issue with Exhibit EF, could not be addressed in the appellate Court. "It is well established that issues or theories not properly raised or presented in the trial court may not be asserted on appeal, and will not be considered by an appellate tribunal. A party who fails to raise an issue in the trial court has therefore waived the right to do so on appeal." (*Westsiders Opposed to Overdevelopment v. City of Los Angeles* (2018) 27 Cal.App.5th 1079, 1091; see also *Krechuniak v. Noorzoy* (2017) 11 Cal.App.5th 713, 725)

The second case cited by Judge Marshall, In re Marriage of Tsatryan, Cal. Ct. of Appeal Case No. B265467, 2018 WL 833694, at *3 (2018), was completed six years earlier than the case mentioned above. As such, it also could not be barred by collateral estoppel. Furthermore, the family case In re Marriage of Tsatryan has one Respondent, but 34 defendants in the instant case.

44

In *Dale v. Dale*, 66 Cal.App.4th 1172, 1183, the court held that where "the dissolution proceeding ha[d] been finally disposed of by means of a final judgment," a person may sue a former spouse in civil court for tortious concealment of community property. "In Worton, wife sued her former husband for damages for fraud and conversion, alleging that during the course of their marital dissolution proceeding, he concealed the existence of certain excess assets in a pension plan. (*Worton v. Worton*, supra,234 Cal.App.3d at pp. 1643-1644.) Husband obtained summary judgment on the ground that the action against him was barred by the doctrine of res judicata. ( Id. at pp. 1644-1646.) The Court of Appeal reversed, holding that res judicata did not apply because husband's "failure to reveal the existence of the excess assets to plaintiff . . . deprived her of an opportunity fully to present her case in the dissolution proceeding." ( Id. at p. 1649.) (*Dale v. Dale*, 66 Cal.App.4th 1172, 1179 (Cal. Ct. App. 1998)) Accordingly, failure to serve and provide the fabricated documents to Arthur (Dkt. No.: 2, passim) deprived him of an opportunity to present his case in the dissolution proceeding.

"Neither party to the proceeding may assert against the other party or any other person any cause of action or claim for relief other than for the relief provided in these rules . . . or the Family Code." (*Sosnick v. Sosnick*, 71 Cal.App.4th 1335, 1339 (Cal. Ct. App. 1999) "Given finite family law jurisdiction, a tort action claiming damages cannot be joined with or pleaded in a dissolution

45

proceeding. (See *In re Marriage of McNeill* (1984) 160 Cal.App.3d 548, 557 [ 206 Cal.Rptr. 641])" (*Sosnick v. Sosnick*, 71 Cal.App.4th 1335, 1339 (Cal. Ct. App. 1999)

## G. LEGAL STANDARDS GOVERNING FRAUD ON THE COURT

Federal Rule of Civil Procedure 60(d)(3) provides that a court may "set aside a judgment for fraud on the court," and codifies a fundamental principle: federal courts always have the "inherent equity power to vacate judgments obtained by fraud." *United States v. Estate of Stonehill*, 660 F.3d 415, 443 (9th Cir. 2011). A court's inherent power to vacate a judgment procured by fraud "fulfill[s] a universally recognized need for correcting injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence" to the rule that a final judgment is typically binding and final. *Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 244 (1944), overruled on other grounds by *Standard Oil of Cal. v. United States*, 429 U.S. 17 (1976).

The Ninth Circuit confirms that this species of fraud exists where there is "clear and convincing evidence" that a party's misconduct has harmed "the integrity of the judicial process[.]" *Stonehill*, 660 F.3d at 443-44. "[F]raud upon the court . . . embrace[s] only that species of fraud which does[,] or attempts to, defile the court itself, or is a fraud perpetrated by officers of the court so that the judicial machinery can not perform in the usual manner its impartial task of adjudging cases that are presented for adjudication." *In re Intermagnetics Am., Inc.*, 926 F.2d

46

912, 916 (9th Cir. 1991).

While each case differs, fraud on the court exists where there is "an unconscionable plan or scheme . . . designed to improperly influence the court in its decision." *England v. Doyle*, 281 F.2d 304, 309 (9th Cir. 1960) (citation omitted); *see also Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128, 1131 (9th Cir. 1995). In *Hazel-Atlas*, fraud on the court consisted of concocting and misrepresenting evidence to obtain and enforce a patent that was then used as a predicate for an infringement suit. 322 U.S. at 240-43.

Importantly, Rule 60(d)(3) relief does not turn on the diligence of those uncovering the fraud. *Pumphrey*, 62 F.3d at 1133. Additionally, "[p]rejudice is not an element of fraud on the court." *Dixon v. Comm'r*, 316 F.3d 1041, 1046 (9th Cir. 2003), *as amended* (Mar. 18, 2003) (citations omitted). Rather, "[f]raud on the court occurs when the misconduct harms the integrity of the judicial process, regardless of whether the opposing party is prejudiced." *Id.* In these instances, the court "not only can act, [it] should." *Id.* Given its focus on the integrity of the judicial process, the fraud-on-the-court inquiry here is informed by the unique role attorneys, judges, and justces representing our government play in the judicial system.

## H. EXAMPLES OF LITIGATION MISCONDUCT WHICH HAVE BEEN HELD TO CONSTITUTE FRAUD ON THE COURT.

Courts have held that a wide range of misconduct can constitute fraud on the court.

47

The fraud perpetrated upon the Court through the Divorce procedure in Case No.:
BD512645 is multi-faceted and pervasive, involving numerous, distinct types of
misconduct, each one of which is sufficient to cause the Court to now terminate the
action and vacate the Judgment. The fact that Arthur's case serves as a veritable
warehouse display of numerous types of misconduct that, on their own, would be
sufficient to terminate an action for fraud upon the court only compounds the
egregious quality of the fraud, as well as the need for this Court to use the full
weight of its inherent powers to address the conduct of the Defendants.

## 1. Hazel-Atlas Glass Company v. Hartford-Empire Company

In *Hazel-Atlas*, the Supreme Court found fraud on the court when the plaintiff in
the underlying action, Hartford, presented manufactured evidence to the court in
connection with a merits-based decision. 322 U.S. at 245.

## 2. United States v. Shaffer Equipment Company

Manufacturing evidence is not the only type of misconduct that can lead to a
finding of fraud on the court. In *United States v. Shaffer Equipment Company*, 11
F.3d 450 (4th 21 Cir. 1993), a government lawyer's failure to comply with his duty
of candor was found to be sufficient.

The court cited *Hazel-Atlas* for the rule that there is "general duty to
preserve the integrity of the judicial process" which the government attorneys in
*Shaffer* violated. 11 F.3d at 458 (citing 322 U.S. 238). The court found that, in
repeatedly failing to advise the court of "the Caron problem and the civil and

48

criminal investigations relating to it," and in "continuing to litigate the matter unabated," the government attorneys sufficiently "undermine[d] the integrity of the judicial process" and violated "the general duty of candor that attorneys owe as officers of the court." Id. at 459. These actions were sufficient to constitute a fraud on the court. 9 See id. at 461.

## 3. Pumphrey v. K.W. Thompson Tool Company

*Pumphrey v. K.W. Thompson Tool Co.*, 62 F.3d 1128 (9th Cir. 1995), is also instructive, finding fraud on the court where the defendant lied about the existence of an inculpatory video that it had in its possession, and as a result, the video did not come to light during the original case

## 4. In re Levander

*In re Levander*, 180 F.3d 1114 (9th Cir. 1999), the Court found fraud on the court where the court relied on perjured testimony in issuing a decision. 180 F.3d at 1120.

## 5. Derzack v. County of Allegheny, Pennsylvania

The plaintiffs "engaged in a pattern and practice of 'stonewalling, bad faith and lack of candor." *Derzack v. Cnty. of Allegheny, Pa.*, 173 F.R.D. 400, 416 (W.D. Pa. 1996). The plaintiff's false discovery responses amounted to fraud on the court "[b]ecause the inherent power of the court reaches conduct both before the court directly and beyond the court's confines, and because the discovery and settlement processes in this case were certainly within the penumbra of the court's authority

49

and at the hands-on supervision of [the magistrate judge] . . . ." Id. Thus, the "plaintiff's misconduct adversely impact[ed] the judicial system . . . ." Id.

**6.    Fraud Upon the Court May Arise From a Course of Conduct.**

Fraud upon the court may also be found in an entire course of conduct by a party, rather than a single act of fraud directed at the court. *Pumphrey*, 62 F.3d at 1133 (listing course of conduct undertaken by general counsel which constituted fraud on the court).

Whether the fraud that defiles the court occurs in a single act, such as proffering perjured testimony for the court's reliance, *Levander*, 180 F.3d at 1120, or a course of conduct, *Pumphrey*, 62 F.3d at 1133, is immaterial. The sole issue is whether the conduct amounts to "an effort by the [opposing party] to prevent the judicial process from functioning in the usual manner." *Stonehill*, 660 F.3d at 445.

*Stonehill* makes clear that the law does not require that the court analyze each instance of misconduct in a vacuum. Rather, the court must also consider whether a party's entire course of conduct rises to the level of "harm[ing] the integrity of the judicial process" such that it was "prevent[ed] . . . from functioning in the usual manner." Id. at 444-45. Accordingly, several instances of litigation misconduct may collectively constitute fraud upon the court, even where each instance, considered separately, does not.

## VII.  CONCLUSION

For the reasons set forth above, the district court's dismissal order should be

reversed, and the case remanded with instructions for the district court.

Dated: 01-17-2025

Respectfully submitted

By: _____

Arthur Tsatryan,
Petitioner, In Pro Per

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s): 24-6898**

I am the attorney or self-represented party.

**This brief contains 12,804 words,** including ___-0-___ words manually

counted in any visual images, and excluding the items exempted by FRAP 32(f).

The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:

    [ ] it is a joint brief submitted by separately represented parties.

    [ ] a party or parties are filing a single brief in response to multiple briefs.

    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _____     **Date** _01-17-2025_

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 8**                                                   *Rev. 12/01/22*